THOMPSON *v.* SPECIAL SCHOOL DISTRICT OF PARAGOULD.

Opinion delivered June 23, 1913.

1.  SCHOOL DISTRICTS—CONTRACT—ESTOPPEL.—Where a subcontractor seeks to enforce a contract with the school board, made after a forfeiture by the contractor, and it appears he finished the work on the strength of the agreement with the board; *held*, it was proper to refuse to submit to the jury the question of equitable estoppel against the district, where the district denied the making of any contract with the subcontractor. (Page 58.)

2.  SCHOOL DISTRICTS—CONSTRUCTION OF BUILDING CONTRACT.—Where a subcontractor sues a school district to recover the cost of installing the plumbing in the school building, and it appears that the school directors relied upon the contractor and his surety to complete the building, and did not promise to pay the subcontractor to do the work, and that he did not rely upon any such promise; *held*, the district was not estopped by any conduct of its directors from denying liability on the alleged contract, sued on. (Page 58.)

3.  WITNESSES—IMPEACHMENT—FOUNDATION.—Where a subcontractor sued a school district, claiming that a new contract had been made with him to do certain work, in order to lay a foundation for his impeachment, a witness for the contractor was properly permitted to answer the question as to whether he had not told a third party that the subcontractor had settled his claim with the contractor. (Page 60.)

4.  WITNESSES—IMPEACHMENT—STATEMENTS TO THIRD PERSONS.—Where a witness testified that he did not recall making certain statements to a third person, in answer to a question asked to lay a

foundation for his impeachment, the third person may testify that the witness made the statement, in order to impeach him. (Page 60.)

Appeal from Greene Circuit Court; *W. J. Driver,* Judge; affirmed.

### STATEMENT BY THE COURT.

The school district entered into a contract with the Southern Building Company, on April 13, 1908, whereby the latter agreed to erect a high school building, including plumbing and heating apparatus, in Paragould, Arkansas, according to plans and specifications, for the sum of twenty-seven thousand dollars ($27,000). The building company entered into a bond with the district, with the Title Guaranty & Surety Company, as surety for the faithful performance of the work and the performance of the covenants of the contract. The building company contracted with appellants to furnish all material and perform all work in installing the plumbing and heating apparatus for the building, and agreed to pay therefor the sum of twenty-seven hundred and fifty dollars ($2,750), payable as the work progressed. The appellants instituted this suit against the appellees, alleging in their original complaint certain breaches of the contract and bond; but it is unnecessary to set this out, as the case went to trial upon the issue as contained in the amended complaint, which is, in substance, as follows:

That after the plaintiffs had made the contract with the Southern Building Company to do the work of heating and plumbing on the building of the school district, and when a part thereof had been placed therein and the main part remained to be furnished and completed, plaintiffs having information that the contract firm was insolvent or was likely to become insolvent and had failed and refused to pay plaintiffs the sums due, reported the failure of the contracting company to pay plaintiff's as agreed, and informed the school district that they would refuse to further comply with their contract with the Southern Building Company and to finish the work of heating and plumbing said building, unless the defend-

ant school district would pay to these plaintiffs the amount then due and owing to them, for the work and labor to be done and materials to be furnished.

That said school district then entered into a contract with plaintiffs, by which it agreed to and undertook that, in consideration of the plaintiffs completing their said contract in the work of heating and plumbing said building, the school district would pay plaintiffs the said sum of money which was then due and owing to them, for materials furnished, work and labor done, and for the materials to be furnished and the work and labor to be done, in the completion of said contract.

That in pursuance of said contract so made between plaintiffs and the board of directors of said school district, who were regularly in session and present and acting on the proposition, plaintiffs completed said work in accordance with its contract made then with the school directors and the contract made with the contracting company, which work and labor done and the materials furnished were accepted by the defendant school district, and by reason thereof the defendant school district became indebted to the plaintiffs in the sum of twenty-five hundred dollars ($2,500), the balance due them on their contract, for which plaintiffs prayed judgment.

The appellees denied that they had entered into a contract with the plaintiffs to pay the claim sued upon, and set up that plaintiffs, after the completion of the work and its acceptance by the school district, had been paid by the Southern Building Company for their work, in the sum of two hundred and fifty dollars ($250) cash, and a note executed by the Southern Building Company, with sureties, to the plaintiffs, appellants, for the balance. Appellees also set up the statute of frauds.

There was testimony on behalf of appellants tending to show that the plumbing company entered into a contract with the Southern Building Company to install the heating and plumbing in the high school building, and were to be paid for same in the sum of between twenty-seven and twenty-eight hundred dollars. The contract to complete the building was made by the board

with the Southern Building Company. The building company entered upon its contract in the spring of 1908, and the work was completed about the first of September, 1909. When the work was about half done the school board declared the contract with the building company forfeited. After this, the plumbing company entered into a contract with the school board to complete the plumbing of the building. A notice was given that there would be a meeting called for the purpose of reletting the contract for the heating and plumbing. The first meeting was put off because of the absence of one of the members of the board. The next meeting was held on the 21st of December, and at that meeting witness, acting for the plumbing company, was present, and he testified that the board employed his company to put in the heating plant and connect up the plumbing work and that his company did complete the work.

On cross examination, witness stated: "There was no contract made and signed and given to me at that time, but the contract was verbal. I don't think the minutes show any contract, and I think they show all that was done." Witness further states that the notice he gave was to let the school board know that the building company had failed to keep their contract. The fact that the plumbing company was not getting its money for the plumbing and heating was talked of some half dozen times between witness and the school board, for the period of four or five months, in which it was stated that the plumbing company would not perform the work unless some arrangements were made. Witness had no writing to show that the school board had ever entered into a contract with the plumbing company to pay the building company's debts. He never filed any claim with the school board, that it should pay the twenty-five hundred dollars ($2,500); never made any demand on the school board for the twenty-five hundred dollars ($2,500), except in a way. Witness never went before the school board properly to demand it, but had gone far enough to know that they were going to contend over it, and he was going to sue them. He

did not present a claim for the twenty-five hundred dollars ($2,500), because he considered it already in and the board knew it. In regard to the note of the Southern Building Company, alleged to have been received and accepted by the plaintiffs in payment of the balance of their claim, witness testified: "The note never reached this town until after the contract between me and the school district was made." Witness never saw the note until after the contract had been made, when Simpson, his attorney, came back from Pine Bluff (where he had gone to try to collect from the Southern Building Company the amount alleged to be due), and told witness he had taken the note. Witness refused to accept the note in settlement. The note had a credit on it of $316.05. Witness never extended the payment of the note. The credit on the note was not accepted with an agreement to extend the time for the payment. Witness stated that he "let the Bank of Commerce investigate the matter of collecting the note, but that he did not consider that the plumbing company took any steps to collect it." Witness stated that he completed the heating and plumbing on the strength of the contract he had made with the board and not on account of the note. Witness knew before they offered to give him the note that the building company was an insolvent concern and that he had no legal right to collect the note. When the building company went into the hands of the receiver, witness left to his lawyer the matter of what to do and he supposed his lawyer filed proof of debt against the building company. Witness never received a cent out of the building company as a dividend.

In regard to the attempts made to collect the amount alleged to be due the appellants from the Southern Building Company, witness Simpson testified in part as follows:

"I wrote the note in question. The facts that led up to taking the note were that Mr. Thompson, under my instructions, refused to proceed with the contract until he was paid, and I advised him not to go any further. Notice was given by Mr. Thompson, as chairman

of the building committee, requesting the school board to discharge the Southern Building Company, dated on the 18th, and the meeting was held on the 19th. I finally went to Pine Bluff to see the Southern Building Company about the matter, and the note was taken from the Southern Building Company for the amount due appellants, but the note was not taken as a settlement of the debt. I was acting in the matter for the City Plumbing Company. Mr. Hood represented the building company at Pine Bluff, and the building company had in progress the construction of a large reinforced steel building. I told the building company that I had come to settle the balance that they owed the City Plumbing Company, and that I had to be satisfied before I would leave that town. Mr. Hood signed the note and I gave him the note to send away to be signed by others. My memory is that the note came back to Paragould just after the holidays. The news that the building company had gone into the hands of a receiver came to my knowledge shortly after the note was taken. The note was filed with the receiver for collection, but the receiver wrote there was nothing to be paid in assets.'' Over the objection of appellants, witness Simpson was asked the following question: ''You may tell the jury what, if anything, Mr. Simpson said to you about having accepted the notes and settled the claim of the City Plumbing Company with the building company, at any time, either immediately after the holidays or thereabouts of 1909 and 1910?'' The witness answered over the appellant's objection, as follows: ''I had a conversation with Mr. Simpson some time between December 26, 1909, and January 3, 1910, on the streets of Paragould between the Bank of Commerce and the Globe Drug Store. Mr. Simpson said to me something like this: He says, 'Grizzard says for you to go up and connect the heating plant; we want to get the school started.' I made the remark that I was willing to do anything. He said the matter was practically settled, that the papers had been received here, and Mr. Thompson would be in possession of his money in sixty or ninety days.''

J. Smith testified in behalf of the appellants that he was a member of the school board of the Paragould Special District in 1909, and that the school board entered into a contract with J. R. Thompson (representing the plumbing company), with reference to the plumbing and heating of the new school building. Thompson had a contract with the Southern Building Company to put this plumbing and heating in for them. Thompson was not getting any money for the work he had done and for that reason he said he was going to take his heating business out of there entirely. The matter was discussed several times between him and the school board. He received a note from the Southern Building Company but refused to accept it and refused to do the heating and plumbing unless the school board would stand good for his money, and the school board agreed for him to go ahead and do the heating and plumbing and they would stand good for it. Five of the other members of the board denied that the board had entered into a contract with Thompson, of the plumbing company, to do the plumbing and heating. The members of the board knew that Thompson was putting in the heating and plumbing, but never made any contract with him to do the same and to pay him for it.

The court on its own motion submitted the issues to the jury as to whether or not the school board had entered into a contract with the plumbing company to do the plumbing and heating of the school building and as to whether or not appellants had accepted the note of the Southern Building Company in payment for the work, instructing the jury that unless the school district had entered into a contract with the plumbing company to do the work, the latter could not recover; and also that if the plumbing company accepted the note of the Southern Building Company for the amount in controversy, as payment for the work done, the plumbing company could not recover. The court refused prayers for instructions, presenting to the jury the issue as to whether or not the school district was estopped from

denying liability because of the conduct of its directors. The jury returned the following verdict:

"Did the Paragould School Board at any lawful meeting, by vote or resolution, contract with or agree to pay the plaintiffs for installing and completing the job of heating and plumbing in the high school building? Answer, 'No.' We, the jury, find for the defendant."

The court rendered judgment in favor of the appellees and this appeal has been duly prosecuted.

*Block & Kirsch, S. R. Simpson* and *W. W. Bandy,* for appellant.

*Johnson & Burr,* for appellees.

WOOD, J., (after stating the facts). *First.* The court did not err in refusing to submit the issue of equitable estoppel to the jury. There was nothing, either in the pleadings or the proof, to warrant the court in submitting such an issue. The appellants in their complaint relied upon a contract, which they alleged they entered into with the board of directors, to do the work of heating and plumbing the building, in consideration that the district would pay them the amount of money which was due them from the Southern Building Company, contractor, and that they completed the work in accordance with the contract.

J. R. Thompson, representing the plumbing company, testified as follows:

"I completed the heating and plumbing on the strength of the contract made with the board," and the only other witness in behalf of appellants testified that he (Thompson) "refused to do the heating and plumbing unless the school board would stand good for his money, and the school board agreed for him to go ahead and do the heating and plumbing and they were to stand good for it."

It is clear that in view of the allegations in the complaint and the testimony above quoted that the doctrine of equitable estoppel could not be invoked by the appellants in this cause. They relied upon a contract entered

into with the school board.  The appellees denied any such contract and the testimony on their behalf tends to show that no such contract was entered into.  Only the issue of the right to recover on contract was made and the court was correct in confining the jury to the determination of that issue and therefore did not err in refusing appellant's prayers for instructions and in giving the instructions presenting such issue on its own motion.  Even if the equitable estoppel had been made an issue by the pleadings, in our opinion there is an absolute want of evidence, as abstracted by appellants, to warrant a finding that the school district through the conduct of its directors estopped itself from denying liability to appellants for the amount in controversy. There is no evidence to show that the directors, as a body, or that any one of them acting singly, did anything to warrant appellants in completing the work of plumbing and heating the building upon any promise, expressed or implied, that the school district would pay for the same.  On the contrary, the evidence in the record tends to prove conclusively that the school board was relying upon its contract with the Southern Building Company and the Guaranty Company, its surety, to complete the work and to pay for same.

It is unnecessary to discuss the evidence in detail. Appellees claim that a large portion of it has not been abstracted, and so much of it as appellants have abstracted does not, in our opinion, warrant a finding that the school district was estopped by any conduct of its directors from denying liability for the claim sued on. There is nothing to show that the directors, as a body or individually, did any act to warrant appellants in believing that the school board would pay them for the plumbing work on the building, nor that appellants did the work, relying on anything done or said by the directors.  This would be necessary, even if estoppel were properly an issue in this controversy.  *Trapnell* v. *Burton,* 24 Ark. 371, page 400; *Rogers* v. *Galloway Female College,* 64 Ark. 627.  See *St. Francis Levee District* v. *Fleming,* 93 Ark. 490.

*Second.* There was evidence tending to prove that appellants finished the work on the school building, relying upon its contract with the Southern Building Company and that appellants took the note of the building company in payment for the work and finally completed and connected the work of plumbing, after receiving this note in settlement of the balance due them on their contract with the Southern Building Company. The evidence warranted the court in submitting this question to the jury, which it did upon proper instructions. There was no prejudicial error in the court permitting the witness Simpson to answer the question propounded to him by appellee's counsel, nor in permitting the testimony of the witness adduced by appellees to contradict the testimony of witness Simpson. The testimony was competent and its credibility was for the jury.

Finding no reversible error, the judgment is affirmed.